*233 Cavanagh, J.
(dissenting). The majority provides interesting commentary on the civil service system. Yet, it skims only the surface of the issues necessary to the resolution of this case, and while seeming to address a narrow issue, leaves behind a rule that could limit the power that the people have reserved in themselves.[1] In my view, Const 1963, art 11, § 5 clearly preserves the power of the people to restrain the actions of the Civil Service Commission whenever the provisions of the constitution are not complied with. I agree with the courts below that a showing of a constitutional violation may constitute irreparable harm to every citizen of this state, and that each citizen may not only bring injunctive or mandamus proceedings, but also has a meaningful opportunity to obtain relief. Further, I would hold that Const 1963, art 11, § 5 does not limit the class of citizens who may obtain relief in the form of a preliminary injunction. Therefore, I dissent.
i
The majority spends pages upon pages discussing the accepted maxim of constitutional construction that the constitution should be given the meaning intended by the people. Additional pages are dedicated to establishing that the existence of irreparable harm is traditionally a precondition to the issuance of *234 a preliminary injunction. Yet, the majority’s observations are somewhat puzzling since neither the trial court nor the Court of Appeals held that Const 1963, art 11, § 5 eliminates the requirement that irreparable harm must be shown. To the contrary, the courts below held that a constitutional violation may cause irreparable harm.
The majority errs at the outset by determining that the rule that irreparable harm must be shown somehow forms a basis for vacating the preliminary injunction issued by the trial court. Yet, though I agree with the majority that irreparable harm must be shown, I believe that the majority is simply wrong in basing reversal on the theory that “when considering the request for a preliminary injunction in this matter, the trial court and the Court of Appeals were in error in granting any preliminary injunction without a showing of concrete irreparable harm to the interests of a party before the Court.” Ante at 226. Rather, both courts explained why irreparable harm to the parties would exist in this case and clearly found there to be a clear likelihood of success on the claim of a constitutional violation. The trial court in fact discussed the issue at great length and the trial court opinion reveals that the court understood the requirements of a preliminary injunction. The following excerpt unequivocally shows that the trial court validly exercised its discretion and found concrete irreparable harm to the interests of the parties before the Court:
Irreparable harm, there has been a zealous plea by the Commission, Counsel for the Commission that these Plaintiffs have to show, as I hear the argument, some particularized harm. Given that none of their positions are immedi *235 ately scheduled to be eliminated, they cannot make that showing.
I understand the Plaintiffs[’] claim, assert their positions are affected, but as I view this case, they stand before this Court as citizens of this state, who challenge the conduct of the Commission in light of its constitutional obligations. And, unless I read this constitutional language as having no meaning whatsoever, a part of Article 11, Section 5 of the 1963 Constitution says very clearly violation of any of the provisions hereof may be restrained or observance compelled by injunction, injunctive or mandamus proceedings brought by any citizen of the state. No qualification there.
And, that clearly means does somebody have to show some particularized injury or damage as a result. I don’t think so. Because, every citizen of this state is entitled [to] have a civil service system that works, that does the state’s business and does it fairly, does it honestly, does it economically, and we’re all affected. So to that extent, to the extent that any contract is entered to [sic] in violation of this constitutional provision, that any position is abolished in violation of the constitutional provision, every citizen of this state is damaged. And, I believe that I am obligated here to effectuate that language certainly, that language takes precedence over . . . some of these other holdings.[2]
I mean, we need to keep in mind . . . this came about because the Legislature did not act sufficiently in the view of Michigan citizens to protect their interest in having a strong system of merit in selecting public employees, but in effect allowed, and apparently had been present for many, many years, a spoils system. And so, they weren’t just satisfied to make changes and create [Const 1963, art 11, § 5], they said not only are we making changes, we are going to empower any citizen of this state by an action, essentially, at any time to assure that this provision is complied with.
*236 So in effect, if a violation of this occurs, my reading is that would be irreparable harm, not just to the Plaintiffs, but to every citizen of this state and the Plaintiffs or someone else, the citizens of Bay City or the factory workers of General Motors Corporation can file an action to bar this unlawful, alleged unlawful activity. And in this case, I’m satisfied that there is a sufficient showing the citizens would be harmed, because it appears that at least one or more of the provisions of Article 11, Section 5 are not complied with under the rules as proposed. [Emphasis added.]
This language demonstrates that the trial court’s holding was not that plaintiffs are relieved from showing irreparable harm, but that a constitutional violation irreparably harms every individual in this state. In other words, the harm resulting in an art 11, § 5 context does not flow from an action taken by the Civil Service Commission against a specific individual as would be the case under the commission’s view. Instead, the harm flows from the violation itself, and flows to each individual citizen.
The majority holds that any citizen may obtain permanent injunctive relief after a constitutional violation occurs, but that a citizen may not obtain a preliminary injunction to enjoin the probable harm that could result from a constitutional violation. The majority correctly recognizes that the derogation of a constitutional right has been held to be irreparable harm for the purposes of determining injunctive relief. Ante at 219-220. Thus, the type of injury wrought by a constitutional violation can clearly be irreparable. The majority’s error lies in implying that irreparable harm must have already occurred in order for injunctive relief to be available. The fundamental flaw in this logic is that the point of a preliminary injunction is to preserve the status quo ante and pre *237 vent the harm from occurring until a decision may be rendered on the merits. In other words, preliminary injunctive relief is designed to meet the threat of a future wrong. 42 Am Jur 2d, Injunctions, § 2, § 10. In any event, an applicant seeking preliminary injunctive relief need only establish a likelihood of success on the merits. See MSEA v Dep’t of Mental Health, 421 Mich 152; 365 NW2d 93 (1984).
Further, by precluding preliminary relief in cases where a citizen alleges that irreparable harm will result if a constitutional violation is allowed to occur, the majority essentially rewrites the constitution as providing that “violation of any of the provisions hereof may be restrained or compelled by any citizen seeking permanent injunctive or mandamus relief.” However, the constitution is not so limited. It allows any citizen to compel observance or restrain violations through injunctive or mandamus proceedings. As the majority aptly points out, Michigan has long recognized the availability of preliminary injunctions. Those injunctions are necessarily issued through injunctive proceedings.
Like the trial court, the Court of Appeals recognized that irreparable harm to every citizen occurs simultaneously with a constitutional violation. It wrote:
Defendant next argues that no injunction should have been ordered where plaintiffs failed to demonstrate that they would suffer irreparable injury if the injunction was not issued. It argues that “a bare allegation of constitutional violation fails to demonstrate irreparable harm.” We disagree because Const 1963, art 11, § 5 specifically provides that “violation of any of the provisions hereof may be restrained or observance compelled by injunctive or mandamus proceedings brought by any citizen of the state.” As a *238 matter of first impression, we believe that this language is a constitutional declaration that a violation of Const 1963, art 11, § 5, in itself, amounts to irreparable harm supporting injunctive relief.[3] [236 Mich App 96, 106; 600 NW2d 362 (1999).]
In light of these statements by the courts below, I believe it clear that the problem the majority finds is not with the failure to address the existence of irreparable harm, but with the idea that the irreparable harm caused by a violation of Const 1963, art 11, § 5 may be remedied by preliminary injunctive proceedings brought by any citizen rather than only by citizens affected in some way peculiar from the rest of the populace. I agree with the courts below and believe that the majority’s approach is contrary to the language and purpose of the constitution.
n
The majority acknowledges that the lower courts stated that a constitutional violation amounts to irreparable harm, but nonetheless concludes that neither court required a finding of the requisite irreparable harm. Specifically, the majority writes:
Critical to the issue presently before this Court, the trial court opined in its oral ruling on the preliminary injunction motion that a showing of “some particularized injury or damage” was not necessary to obtain a preliminary injunction against an alleged violation of Const 1963, art 11, § 5. The trial court stated that “if a violation of [§ 5] occurs, my reading is that would be irreparable harm, not just to the Plaintiffs, but to every citizen of the state.” [Ante at 215.]
*239 Similarly, with respect to the Court of Appeals opinion, the majority writes:
While it may have been more clearly stated, the emphasized language indicates that “a bare allegation of a constitutional violation” is sufficient to show irreparable harm, hi other words, the Court of Appeals concluded that a showing of irreparable harm to a particular party is not required for a preliminary injunction against an alleged violation of § 5. [Ante at 217.]
While I agree with the majority that the courts below said that a constitutional violation is equivalent to irreparable harm, I do not agree with the conclusion that the courts “in other words” implied that harm to an individual party need not be shown. Rather, in my view, the courts below “in other words” said that every individual citizen is irreparably harmed by a constitutional violation. I am at a loss to understand how the Court’s statement that these plaintiffs would suffer irreparable harm can simultaneously be a conclusion that the plaintiffs need not show that they themselves would suffer irreparable harm. The majority makes the mistake of reading the trial court opinion as providing that any citizen can bring suit by saying, “I can bring suit for all of us, because society as a whole is harmed by a violation of Const 1963, art 11, § 5.” In my view, the trial court decision actually provides that a violation of Const 1963, art 11, § 5 injures each citizen individually. As such, every citizen may institute injunctive or mandamus proceedings. Thus, under the trial court opinion, any plaintiff bringing suit would be constitutionally authorized to allege “I will be hurt individually because of the violation.”[4]
*240 Interestingly, the majority concludes:
[S]tanding has been described as a requirement that a party ordinarily must have a substantial personal interest ... as opposed merely to having a generalized interest in the same manner as any citizen. ... It is this requirement that unquestionably is targeted by § 5 when it provides that “[violation of any of the provisions hereof may be restrained or observance compelled by injunctive or mandamus proceedings brought by any citizen of the state.” [Ante at 217-219.]
Despite the fact that the aforementioned constitutional language mentions neither standing nor the requirements for a preliminary injunction, the majority reaches the conclusion that particularized injury is suspended for the purposes of coming before the Court, but once there, particularity is reintroduced in association with the requirement that irreparable harm be shown. In other words, under the majority’s approach, anyone can come before the court to seek an injunction, but if the person cannot show the type of particularized harm that would normally be required for standing purposes, then they cannot obtain relief in the form of a preliminary injunction. The effect of such an approach is to completely destroy the power of “any citizen” to compel constitutional compliance.
The constitutional language does not provide only that injunctive proceedings may be brought by any citizen. It additionally says that a violation may be restrained or observance compelled by any citizen. Yet, under the majority view, only a citizen whose job will be adversely affected by a decision of the commission may restrain the violation by preliminary iryunctive proceedings. Thus, in the context of preliminary proceedings, the protection afforded to “any cit *241 izen” of this state effectively becomes a protection afforded to a limited class of citizens. I cannot support an approach that allows all citizens with valid legal claims regarding a constitutional violation to institute legal proceedings, but which nullifies the purpose of those proceedings by making preliminary injunctive relief per se unavailable to a large percentage of those citizens despite the contrary purpose and language of our constitution.
I believe that the problem created by the majority approach stems in part from the fact that the majority injects particularity into its analysis of irreparable harm, rather than limiting the question of particularity to the standing context. The generally accepted analysis used in preliminary injunction cases considers four factors:
harm to the public interest if an injunction issues, whether the harm to the applicant in the absence of a stay outweighs the harm to the opposing party if a stay is granted; the strength of the applicant’s demonstration that the applicant is likely to reveal on the merits; and demonstration that the applicant will suffer irreparable injury if a preliminary injunction is not granted. [MSEA v Dep’t of Mental Health, supra.]
The focus of the four-factor analysis is on the type of injury rendered by the issuance or nonissuance of an injunction. In the context of issuing injunctions, irreparable injury has special meaning under the law. The injury is traditionally defined in terms of whether the injury can be repaired by means other than through the issuance of an injunction.[5]
*242 Although it is trae that the MSEA test and the tests applied in various cases cited by the majority refer to injuries to the “plaintiff” or to the “complainant,” the references are fairly unremarkable since it is always the complainant who seeks redress of an injury. Also, in an injunction case involving subject matter not governed by a constitutional provision such as Const 1963, art 11, § 5, the complainant will have had to prove particularity in order to establish standing. What is remarkable, however, is the fact that the majority offers no authority for the proposition that a plaintiff must show that the harm he suffers is somehow irreparable in a different way than it is irreparable to any other plaintiff. The reason, in my view, is that the “requirement that a party ordinarily must have a substantial personal interest at stake in a case or controversy, as opposed merely to having a generalized interest in the same manner as any citizen,”[6] pertains to standing and not to the question whether a party will suffer irreparable harm.[7] Here, Const 1963, art 11, § 5 specifically confers standing on all citizens.
For all these reasons, I believe that the majority opinion is erroneous and that its reasoning fails to *243 support its conclusion. I prefer the reasoning and holding of the trial court. I would, therefore, affirm the recognition by the courts below that irreparable harm may be established by proof of a violation of Const 1963, art 11, § 5, and hold that the trial court did not abuse its discretion.
Weaver and Kelly, JJ., concurred with Cavanagh, J.

 Despite its attempts to leave the issue narrow, however, the majority expands its opinion to include discussion of Michigan’s Rules of Court. Because of how the majority decides this case, the opinion is not affected by the proposed court rule incorporated into the majority’s appendix. My comments about the substantive propriety of the court rule will be reserved for discussion as part of the standard procedure for implementing court rule changes.

 Citations omitted.

 The Court of Appeals did say that an “additional” showing of irreparable harm was unnecessary, but it first found that the threatened harm would be irreparable because of the alleged constitutional violation.

 In any event, this issue relates to the question of standing, as will be further explained.

 For example, Black’s Law Dictionary provides the following explanation, “ ‘Irreparable injury’ justifying an injunction is that which cannot be *242 adequately compensated in damages or for which damages cannot be compensable in money.” Black’s Law Dictionary (6th ed).

 Ante at 217-218.

 As was recently recognized by a majority of this Court in Lee v Macomb Co, 464 Mich 726; 629 NW2d 900 (2001), the type of particularized harm referenced by the majority is clearly a requirement of the standing doctrine. As noted previously, no similar particularity requirement is required as part of the irreparable harm inquiry. However, even if I agreed with the majority that particularity is required in the context of irreparable harm, as explained at length in this opinion, I believe it is inconsistent to conclude that the people of the state of Michigan intended to suspend the requirement of particularized harm for the purpose of allowing citizens to enter the courtroom door, but nonetheless those citizens must afterward show the very type of particularized, concrete harm suspended for standing purposes in order to receive a preliminary injunction.